By the Court, Cowen, J.
In January, 1837, John Waydell, Joshua Underhill and Nicholas Cort, composing the firm of N. Cort & Co., borrowed $1,700 of Luer. The firm was dissolved in 1838, and Liter, knowing of the dissolution, took the individual notes of Cort, one for $566; and two for $500 each. Cort also paid Luer some money, and delivered to him the note of, a thud person, as one of the rvitnesses said he.-believed, though he could not state the name, date, or amount. The whole came up to the moneys due to. Luer from the firm,' being over $1,800. The notes and cash were given in settlement of the money borrowed ; and Luer gave up to Cort the note .of the firm, which he held for that sum. Cort’s notes were renewed from time to time, for two years. They were credited by Cort’s former partners, in his general account, as so much assumed by him. The notes given by him remaining unpaid, Luer sued the firm, in the court below on the original loan, and .recovered; the court holding that the notes of one partner could not be considered as the payment or satisfaction of a debt due from all. The circumstance of a belief by the witness that there was also a small note of some third person in the transaction, was disregarded as too' loose for consideration; and perhaps correctly. That being laid out of view, the question is, whether a promise from one of sev *449 ©ral debtors, received in satisfaction, extinguishes tire demand against all.
I had occasion, in Frisbie v. Larned, (21 Wend. 450, 452,) to review the cases which hold that where a man gives his note for a debt antecedently due from himself, it is, under no circumstances, a satisfaction, even though agreed by the creditor to be taken as such. Accord and satisfaction by one promise, is not predicable of another. Soon after came the case of Cole v. Sackett, (1 Hill, 516,) wherein it was contended that if two persons are indebted, the note of one may operate by agreement as a satisfaction for both. I again adverted to the principle so well-established in this court, that the note of both the debtors could not have that effect; and felt constrained to follow it out into the obvious corollary, that the less and weaker security could not have a greater effect than the higher and stronger. So far as Arnold v. Camp (12 John. 409) may be supposed to conflict with this doctrine, it was considered and overruled. Our attention is however again called to that case, and some strength it is supposed to derive from the English cases; one especially, which has been lately decided. (Thompson v. Percival, 5 Barn. & Adolph. 925.) I have looked into that case, and find it not near .so much in accordance with our doctrine as that of David v. Ellice, (5 Barn. & Cress. 196,) which it professes to overrule. In the latter case, Abbott, C. J. required that, to discharge the retiring partner, some new debtor should be introtroduced. Denman, C. J., in the case now relied upon, admits that some new consideration must be made out, or the note cannot operate as an accord and satisfaction, Abbott, C. J. had failed to discover any consideration. Denman, C. J. says, however, that the note is something different from what the creditor had before, and that the liability of one debtor may be better than the joint liability of two, in respect to the solvency of the parties, or the convenience of the remedy. That a new note either of the same debtors or one of them, is something different from a previous note or account, is true, though I have been unable to see how the name of one is better alone, than when joined with another’s, in point of solvency. That the remedy becomes, as *450 Lord Denman remarks, more obvious and therefore better against one than two, where one of them happens to die, or in various . other ways, may be admitted. But something equivalent may also be said where a single debtor gives his note for a book account. The proof thus becomes easier, and beside, the note may be negotiated; yet it never operates as a discharge of the account. The note maybe produced and cancelled at the trial, and the account thus be made the subject of a recovery. In short, to adopt the principle on which Thompson v. Percival proceeds, we must overrule hundreds of decisions made by this court and never questioned. Most of the previous English authorities are reviewed by that case; and they are found to be quite conflicting. Scarcely one of them, till we come to David v. Ellice, professes to search for any principle on which a defence like the present can be sustained. That case failed to find any; and though Thompson v. Percival may have been more successful on principles sometimes allowed in England, it is altogether repugnant to those long acted upon here. I remember several English dicta to the effect that a mere accord, if it be binding and afford a new remedy, may operate as a bar. (See Case v. Barber, T. Ray, 450; T. Jones, 158, S. C.) The case of Milward v. Ingram (1 Mod. 205) held that a plea of an account stated, and a promise to pay, was a bar to an action for work. A note or a mere admission, is evidence of an account stated; Yet a defence at the present day, grounded on the fact that the defendant had met the plaintiff, acknowledged the debt to be of a certain amount, and promised to pay it, would be deemed quite absurd, even though the plaintiff should agree to receive it in satisfaction. In Sheehy v. Mandeville, (6 Cranch, 253,) Marshall, C. J. said, a man may, if he will, discharge his debtor without consideration. This dictum was cited to sustain the judgment in Arnolds. Camp. Cases were there also cited that a promissory note given by a debtor and accepted in satisfaction, discharges the debt; that it will even discharge a judgment. There is indeed little doubt of that case having gone upon the long- exploded doctrine, that one promise may be pleaded in bar of another. In Reed v. White, (5 Esp. Rep. 122,) an account *451 stated with one part owner, was held to discharge the other. In Evans v. Drummond, (4 id. 89,) where the notion appears to have been first started, one partner had given his individual acceptance as a security for that of both, and then the creditor sued the firm. Lord Kenyon said the suit was not to be endured; and held the other partner discharged. Such are the instances of reasoning on which the defence now interposed has been sometimes allowed and sometimes denied in England. Subjected to scientific scrutiny, and weighed in the mind of Lord Tenterden, it was found to be so obviously destitute of principle, and so evidently the result of one or two hasty nisi prius cases, that he felt bound to reject it. He put the judiciary for the first time to think and reason on the question. None of them supposed for a moment, that, under the English law, a debt can be discharged without consideration; and Lord Den-man’s attempt to extract one, seems, with deference, to let in the obsolete doctrine, (obsolete now in England as well as New-York,) that a debtor promising in any form to pay, may discharge the very debt on which the promise rests. I admit that a negotiable note or an account stated may operate sub modo to satisfy a debt. The former has been considered a payment for the purpose of the surety bringing an action for money paid against the principal; and the latter extinguishes the original account at the election of the creditor. But I want some well considered case where either has been allowed in hostility to the creditor’s suit upon the demand which they were given to secure. I deny that any such exists; and for a host of cases to the contrary, both as to tort and contract, I refer to the title Accord and Satisfaction, in Bac. Abr. and Coventry & Hughes' Digest. Our own cases must be within the recollection of every one. Mr. Justice Sutherland went through the whole inquiry, in Hughes v. Wheeler, (8 Cowen, 77.) That case holds, that stating an account, giving the debtor’s negotiable note, and its acceptance for the original debt, are not a bar to an action for the debt. The precedent in Chitty founded on the old English rule was there repudiated; and the case has not since been disturbed. Suppose the account had been against *452 two, settled by one, and his note alone taken;'who does not see that such a defence would be still weaker 7 Had the other been a surety, the defence might possibly have been allowed on that peculiar relation. One is prepared for the exertion of almost any degree of judicial ingenuity in favour of a surety, since it has been held that delay of the creditor may, under circumstances, discharge him. His case, however, does not stand on accord and satisfaction. What is better settled than that the promise to pay a subsisting debt, or to discharge a precedent duty, is no consideration 7 Partners are all principals, each being bound for the-debt in solido. They have had the creditor’s money, and eáten their bread at his expense. It is their duty not- merely to promise—-not to stop with their note, and above- all, a note perhaps-palmed off by a member of the firm known to all the debtors as a bankrupt—but to repay the money loaned, or the price of the plaintiff’s property out of which they have made money. I am aware that some of the English cotuts have taken up the idea of the retiring partner being a mere surety. Such was the notion of Lord Lyndhurst in Oakeley v. Pasheller, (10 Bligh, N. S. 548, 589, 4 Clark & Finn. 207, 233, S. C.;) and such supposed surety was held to be discharged, on the ground that time had been given to the partner who remained. This might also have been the ground of Hart v. Alexander, (2 Mees. & Welsb. 484.) It was there claimed, however, that'a debt may be discharged without consideration, and the contrary doctrine of Lord Tenterden was questioned. It may as well be here mentioned, that the King’s Bench, with Lord Tenterden at their head, had twice before distinctly repudiated the doctrine of Evans v. Drummond; once in David v. Ellice, supra, and once before in the case of Lodge v. Dicas, (3 Barn. & Ald. 610.) Three of the judges expressed themselves very fully in the latter case, that there must, to constitute a satisfaction, be a new consideration from the partner who gives his promise; and that the creditor’s agreement to take it and discharge the retiring jiartners was a nudum pactum. In reply to such conclusive arguments, emanating from the greatest judges of England, we have various sorts of answers, most if not all of which I have mentioned. All of *453 them, leave the impression that the English courts allowing the defence is an instance among those anomalies in the law, which sometimes arise from blindly following the hasty decision of a distinguished judge.
Another doctrine is familiar to every one, viz. that in order to extinguish a debt, the creation of a new one in equal degree, though agreed to be taken in satisfaction, is no bar. Who would have hesitated, had it not been for Evans v. Drummond and some late English cases, to apply that rule to all joint debts, those due from partners as well as others ? Mr. Gow did not, even with Evans v. Drummond before him. He lays down the rule thus: “ Where the two requisites of a joint interest and a joint credit concur, nothing but actual satisfaction, or the extinguishment of the original consideration by the acceptance of a higher security, can invalidate the claim which the creditor possesses against the firm. (Gow On Partn. 200, Am. ed. of 1825.) Where a new partner is let in, and his name is substituted, a different case arises. The creditor may agree to take a distinct thing of any kind in satisfaction, even the mere promise of a third person. (See Kirwan v. Kirwan, 2 Cromp. Mees. 617.)
Looking to the course which the doctrine in question has taken in England, and what, with deference, seems to be a vain struggle and hunting for reasons in the common law, the inquiry naturally arises, and may be of use in the discussion, from what source was it derived? To this the answer would seem to be obvious. It is a fragment imported from the civil law, title De Novatione. This, as the text of that law declares, arises when a second contract is intended, and so expressed by the parties, to operate as a dissolution of the first. (Inst. Lib. 3, tit. 30, De Novatione; see Coop. Just. 297.) The rule is, in that law, laid down without qualification, and prevails though the new contract be made by the original parties, or one of them, as well as where a new party is introduced. It has of course been adopted in France; and has been introduced to the English reader by Mr. Evans’ translation of Pothier. (Pt. 3, ch. 2.) “ The novatidn is valid, whatever may be the nature of the first debt *454 or that substituted in its place.” (Id. Art. 2, No. 554.) In the French law, one of several debtors who are jointly bound may be substituted for both. (Poth. No. 564.) Mr. Evans is careful to warn us in the outset of the title, that this doctrine is unknown to the common law. (1 Ev. Poth. 380, Lond. ed. of 1806, note (a) to No. 546.) He lays down the common law rule that accord is not satisfaction and cannot be made so on the principles of the common law, except by a contract of a higher nature. A glimpse from Justinian probably fell upon Lord Kenyon’s mind, when, for the first time, he pronounced at nisi prius, that the simple contract of one partner to pay the debt of the firm worked a novation. Very little objection would probably exist against the doctrine, could, it be cut from the institutes and engrafted bodily upon our system, provided we could at the same time eradicate every thing of indigenous origin which tends so strongly to overshadow and destroy it. The small branch which has been imported looks singularly strange in its new company, and has been withal so badly cultivated, perhaps so badly engrafted, as to want one of its distinctive features ; and that a very important one. The title just quoted from Justinian complains that the ancient lawyers built novations on an implied intent, and indulged in presumptions arising from the circumstances of each case. It adds: “This uncertainty gave rise to our constitution, which enacts that a novation of a former contract shall only take place when it is expressed by the contractors.” The French rule approximates very nearly to the same thing. It declares that a novation shall not be allowed unless the intention be so evident as to admit of no doubt. (Poth. ut supra, No. 259.) Ón the very first breaking of the subject by Lord Kenyon, he required no more evidence of an intent to discharge the out-going partner than the mere act of taking an acceptance from one for the joint debt. Throughout all the subsequent English cases which are that way, the same laxity is apparent; not one of them looking back to the true origin of the rule and discovering how much it had been corrupted in its transition. Here, it stands fatally confronted by another rule of the common law applicable to all cases where a *455 novation prevails, as it may through the paper of a third person. To show that, even in such case, the original debt was meant to be extinguished, an express agreement to that effect must be proved. “ Otherwise,” according to the sequel of the text De Novatione., “ the first contract shall continue valid, and the second be regarded as an accession to it; so that an obligation may remain under both contracts:” or, as we should say, the second contract is but a security collateral to the first.
On a review of the question, I am entirely satisfied that our decision in Cole v. iSackett is the only one that can stand consistently with the rales of the common law.
Judgment affirmed.